**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| TRACY FORSHEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4: 19 CV 2708 DDN |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the applications of plaintiff Tracy Forshee for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1385. The parties have consented to the exercise of plenary authority by the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons set forth below, the final decision of the Commissioner is affirmed.

## I. BACKGROUND

Plaintiff was born in 1968 and was 48 years old at the time of her January 5, 2016 amended alleged onset date. (Tr. 17, 200.) She filed her applications on October 17, 2016, alleging disability due to seizures, fibromyalgia, migraines, depression, mini strokes, and bilateral foot neuropathy. (Tr. 220.) Her applications were denied, and she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 122, 130-44.)

On December 27, 2018, following a hearing, an ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 17-31.) The Appeals Council denied her

request for review. (Tr. 1-4.) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. ADMINISTRATIVE RECORD

The following is a summary of plaintiff's medical and other history relevant to her appeal.

Between November 2015 and March 2018, plaintiff had normal gait and could tandem (heel-to-toe) walk, a test used to screen individuals for neurologic and vestibular disorders. (Tr. 293, 306, 313, 324, 333, 380, 416, 591, 823, 830, 838, 865, 883, 903, 932, 953, 963, 983, 1026, 1071, 1109, 1168, 1532, 1538, 1547, 1599, 1619, 1633, 1648, 1668, 1682, 1703, 1713, 1742, 1749, 1774, 1805, 1830, 1873, 1921, 1952, 1995.)

A May 21, 2015 MRI of plaintiff's brain revealed mild nonspecific white matter changes suggesting vasculopathy, such as chronic hypertension, migraines, and arteriosclerosis. (Tr. 529-30.) On January 25, 2016, plaintiff had a normal neurological examination, with normal reflexes, muscle tone, coordination, and no cranial nerve deficit. (Tr. 820.)

An October 24, 2015 left knee MRI showed focal mild to moderate patellar chondromalacia (runner's knee) and mild superolateral Hoffa's fat edema which could represent nonspecific inflammation or impingement. (Tr. 523.) An x-ray taken December 11, 2015 of plaintiff's left foot showed no abnormality. (Tr. 517.)

On January 15, 2016, plaintiff saw Manisha Shastry, M.D., an internist, with complaints of pain everywhere, but most bothersome in her left foot. She sometimes woke in the middle of the night with pain. Her pain was worse with walking. She had low back pain that radiated to the flank. On exam she was hyper-sensitive to touch on the border of her left foot. (Tr. 809-10.) A January 25, 2016 MRI of her lumbar spine showed minimal facet arthropathy with a very capacious canal. Disc disease was prominent at L4-L5 but did not appear to be causing deformity or nerve root impression. (Tr. 512.)

On February 19, 2016, plaintiff saw Ksenija Kos, M.D., a neurologist, for follow-up for seizures, and he prescribed Lamictal, an anti-convulsant. A brain MRI was unremarkable. She had normal gait, sensation, reflexes, and muscle strength and tone. (Tr. 829-31.)

On March 3 and 7, 2016, plaintiff had normal gait, sensation, and motor strength. (Tr. 371, 838-39, 1548.) On March 7, she saw John David Moore, M.D., for back and hip pain. His impression was sacroiliitis and he recommended an injection. (Tr. 840.)

On April 22, 2016, plaintiff was seen at Mercy Hospital because "she didn't feel right." She felt fidgety, with tingling in her fingertips, and had a headache for the past two days. She was diagnosed with anxiety and instructed to continue Xanax and an antidepressant. (Tr. 860-65.)

A May 3, 2016 CT of her head showed no intracranial abnormalities. (Tr. 498.) On July 21, 2016, plaintiff reported to Dr. Shastry that her seizures had been stable. (Tr. 317.)

A September 12, 2016 EMG with nerve conduction of the lower extremities was normal. (Tr. 496.)

On October 20, 2016, Dr. Kos noted that Imitrex, for migraine headaches, helped plaintiff's headaches. (Tr. 303.)

On December 14, 2016, plaintiff saw Danielle Kramer, D.O., for left knee pain and upper respiratory symptoms. Dr. Kramer thought that repeat inflammatory marker testing would be helpful because no obvious osteoarthritis appeared on imaging. One of plaintiff's inflammatory markers was elevated and additional testing was ordered to rule out inflammatory arthritis. (Tr. 595-96.)

In a function report dated December 18, 2016, plaintiff stated that she could prepare simple meals, manage her funds, attend medical appointments, shop in stores, read, play games, watch television, needlepoint, and use the internet. She reported she got along with others, spent time with friends and family, attended church, and interacted appropriately

with authority figures. She could dress, bathe, care for her hair, shave, and feed herself. (Tr. 231-35.)

During a January 9, 2017 telephone visit, Dr. Shastry advised her that her lab results showed elevated C-reactive protein, but still were lower than her previous results. She also complained of a headache. (Tr. 592.)

On January 18, 2017, Joann Mace, M.D., reviewed plaintiff's file and opined that plaintiff should avoid all exposure to hazards, including machinery and heights. (Tr. 114-15.)

On February 3, 2017, plaintiff reported that Imitrex helped her headaches. (Tr. 947.) On February 7, 2017, she reported that her last seizure was on May 3, 2016. (Tr. 962.) On March 10, 2017, plaintiff reported doing well on seizure medication and denied any side effects. (Tr. 1727.) On July 21, 2017, plaintiff reported that she had one seizure the month before and that Imitrex helped her headaches. (Tr. 1020.) On December 18, 2017, plaintiff was ambulating well with normal range of motion in her hips and legs and no radicular pain. (Tr. 1076-77, 1885-86.)

During August 21-22, 2017, plaintiff was admitted to St. Anthony's Hospital for nausea, vomiting, diarrhea, and inability to keep food or medications down. She was diagnosed with small bowel obstruction with Crohn's disease of the small intestine and prescribed antibiotics. (Tr. 606-39.)

On October 6, 2017, plaintiff was seen in the ER at St. Anthony's Hospital following a car accident. X-rays of her thoracic spine showed mild lumbar scoliosis and mild disc space narrowing at multiple levels. Her lumbar spine showed bilateral L4-L5 and L5-S1 facet arthropathy (breakdown of cartilage), L4-L5 disc space narrowing, and grade 1 L5-S1 spondylolisthesis (forward displacement of the lumbar vertebrae over the one below it). Her cervical x-ray showed moderate C6-C7 degenerative disc disease and an old T1 superior endplate fracture. (Tr. 674.)

On January 12, 2018, plaintiff reported she thought she had had 5 or 6 seizures since October 2017. She had no numbness, tingling, or weakness upon examination. (Tr. 1898, 1092.)

On February 9, 2018, plaintiff had normal reflexes, sensation, muscle strength, tone, and fine finger movements. She reported having 1 or 2 headaches per month and that Imitrex helped. (Tr. 1109, 1915.)

On March 1, 2018, plaintiff reported having a seizure two days earlier. (Tr. 1115, 1928.) On March 16, 2018, plaintiff saw Anthony Anderson, M.D., for low back and bilateral hip pain. She had normal deep tendon reflexes, normal sensation, and normal muscle strength throughout. Dr. Anderson diagnosed spondylolisthesis of the lumbar spine; fibromyalgia; and spondylosis, a type of arthritis of the spine. He suggested chiropractic care with a daily conditioning and exercise regimen. (Tr. 687.) On March 30, 2018, plaintiff reported having two seizures per week. (Tr. 2009.)

On May 3 and 8, 2018, plaintiff had normal deep tendon reflexes, normal sensation, and normal muscle strength throughout. (Tr. 682, 684.)

On June 22, 2018, plaintiff reported her most recent seizure was in May 2018. (Tr. 1983.) On June 29, 2018, she had normal deep tendon reflexes, normal sensation, and normal muscle strength throughout. On July 13, 2018, she had normal deep tendon reflexes, normal sensation, and normal muscle strength throughout. (Tr. 676-78.)

Between February 2016 and March 2018, treatment notes state plaintiff had "preserved" or "intact" memory, concentration, and attention. (Tr. 293, 306-07, 313, 324, 333, 359, 371, 380, 591, 829, 838, 883, 902, 921, 952, 983, 1026, 1070, 1109, 1538, 1547, 1571, 1599, 1618, 1633, 1648, 1668, 1682, 1702, 1742, 1748, 1774, 1805, 1830, 1872, 1881, 1921, 1952.)

On May 3, 2018, plaintiff received a lumbar facet joint injection. On May 10, she was seen for low back pain with additional complaints of pain in her hip, mid back, knee, and shoulder. Her pain increased depending on various factors, including her mood,

moving from sitting to standing, exercise, walking, and house chores. An MRI was ordered. She was started on Baclofen, a muscle relaxant, and referred to physical therapy. (Tr. 682-84.)

On June 28, 2018, she saw Dr. Krishnan for low back pain. Her back was tender to palpation over the lumbar spine, and she had paraspinal muscle spasm with guarding. She was prescribed Tramadol. On July 13, 2018, she saw Dr. Krishnan again and received a lumbar medial branch block. (Tr. 676-78.)

**ALJ Hearing**

On August 16, 2018, plaintiff appeared and testified to the following at a hearing before an ALJ. (Tr. 39-66.) She is single and lives alone. She decided to stop driving due to seizure activity following a September 2013 auto accident. She last worked in home health care and left that job following a car accident because she no longer had auto insurance and a dependable vehicle. She has also worked as a cashier at Walgreens, a paraprofessional or teacher's aide for special needs children, and an assistant manager at Dollar General. She has two years of college education. (Tr. 45-50.)

Her medication prevents her from doing everyday activities. She spends a lot of time sleeping and lying down. She has significant pain in her lumbar spine. Her lumbar pain is 10/10 on most days and prevents her from lifting anything, squatting, sitting for longer than 20 minutes, standing for 15 minutes, and walking more than 2-3 aisles in a store. She cannot lift five pounds. If she sits for too long her lower extremities start to go numb. She can stand for about 15-20 minutes and walk about 2-3 aisles in a store before she needs to stop. She has two to three "absent" seizures per day that last 1-2 minutes whereby she is aware of what is going on but cannot communicate. Her seizures are triggered by strobe lights and anxiety. (Tr. 51-53.)

A vocational expert (VE) also testified at the hearing. The VE testified that plaintiff could not perform her past relevant work (PRW). The ALJ asked the VE about a hypothetical claimant with plaintiff's age, education, work experience, and residual

functional capacity (RFC). The VE testified that the individual would be able to perform occupations such as document preparer, tube operator, and price marker. (Tr. 61-65.)

## III. DECISION OF THE ALJ

On December 27, 2018, the ALJ issued a decision finding that plaintiff was not disabled. (Tr. 17-31.) At Step One of the sequential evaluation, the ALJ found plaintiff had not performed substantial gainful activity since her January 5, 2016 alleged onset date. At Step Two, the ALJ found that plaintiff had the severe impairments of degenerative disc disease of the lumbar spine, sacroiliitis, fibromyalgia/myalgia, seizures, headaches, moderate obstructive sleep apnea, major depressive disorder, and generalized depressive disorder. However, the ALJ found that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. part 404, subpart P, appendix 1. (Tr. 20-21.)

The ALJ determined that plaintiff retained the residual functional capacity (RFC) to perform "light" work as defined in the regulations, except that she can lift up to 20 pounds only occasionally; lift/carry up to 10 pounds frequently; stand/walk and sit for up to 6 hours in an 8-hour workday with normal breaks; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch, and crawl. She should avoid exposure to extreme cold, operational control of moving machinery, unprotected heights, and hazardous machinery in a job in which her work is limited to simple, routine, and repetitive tasks with only occasional interaction with the public, coworkers, and supervisors. With this RFC, the ALJ found plaintiff did not have any past relevant work (PRW). (Tr. 24-25.)

Relying on VE testimony, the ALJ concluded that plaintiff's impairments would not preclude her from performing other work that exists in significant numbers in the national economy, including work as a document preparer, tube operator, and price marker. Consequently, the ALJ found plaintiff not disabled under the Act. (Tr. 25-31.)

## IV. GENERAL LEGAL PRINCIPLES

The Court's role on judicial review of the Commissioner's final decision is to determine whether the Commissioner's findings applied the relevant legal standards to facts that are supported by substantial evidence in the record as a whole. *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Id.* In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision. *Id.* As long as substantial evidence supports the decision, the Court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the Court would have decided the case differently. *See Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months. 42 U.S.C. § 423(a)(1)(D), (d)(1)(A); *Pate-Fires*, 564 F.3d at 942. A five-step regulatory framework is used to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step process).

Steps One through Three require the claimant to prove: (1) she is not currently engaged in substantial gainful activity; (2) she suffers from a severe impairment; and (3) her condition meets or equals a listed impairment. 20 C.F.R. § 404.1520(a)(4)(i)-(iii). If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five. Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform PRW. Id.; § 404.1520(a)(4)(iv). The claimant bears the burden of demonstrating she is no longer able to return to her PRW.

*Pate-Fires*, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to her PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy. Id.; 20 C.F.R. § 404.1520(a)(4)(v).

## V. DISCUSSION

Plaintiff argues the ALJ erred in failing to consider both the quality and ability to sustain activities in determining her RFC. She argues her RFC is inconsistent with a finding of severe migraine headaches and seizures, and that the ALJ erred in assessing her credibility. In support, she notes the ALJ cites responses from her December 2016 function report, completed when she filed her initial applications, and cites only portions of her answers without including other portions that explain her ability to sustain those activities. She asserts there is no record evidence that she is able to perform any type of job or tasks on a regular and consistent basis with her conditions and resulting limitations. She argues the record evidence supports the conclusion that she is able to perform small tasks at a slow pace throughout the day with breaks as needed, but not that she can perform substantial gainful activity. This Court disagrees.

Residual functional capacity is a function-by-function assessment of an individual's ability to do work-related activities based on all the evidence. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). The ALJ retains the responsibility of determining a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, examining physicians, and others, as well as the claimant's own descriptions of her limitations. *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). Ultimately, RFC is a medical question, which must be supported by medical evidence contained in the record. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). The claimant has the burden to establish her RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). The RFC need

only include the limitations supported by the record. *Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006).

Here, the ALJ determined that plaintiff retained the RFC to perform a reduced range of simple, light work with additional limitations. She could lift up to 20 pounds occasionally; lift/carry up to 10 pounds frequently; stand/walk for up to 6 hours and sit for up to 6 hours in an 8-hour workday with normal breaks; occasionally climb ramps or stairs, but never climb ladders, ropes, or scaffolds. She could occasionally balance, stoop, kneel, crouch, and crawl, and should avoid exposure to extreme cold, operational control of moving machinery, unprotected heights, and hazardous machinery in a job in which her work is limited to simple, routine, and repetitive tasks with only occasional interaction with the public, coworkers, and supervisors. (Tr. 24-25.)

In making his RFC finding, the ALJ considered plaintiff's subjective allegations of disabling symptoms, but found that her statements were not entirely consistent with the record evidence. (Tr. 25.) *See* 20 C.F.R. §§ 404.1529, 416.929 (explaining how the agency considers subjective allegations); Social Security Ruling (SSR) 16-3p, 2016 WL 1119029 (S.S.A. 2016) (superseding SSR 96-7p and providing guidance regarding how the agency evaluates statements regarding the intensity, persistence, and limited effects of symptoms). In doing so, the ALJ discussed the limitations plaintiff testified to and the objective medical evidence that did not support her allegations. (Tr. 25-27.) Elsewhere in the decision, the ALJ also considered plaintiff's daily activities and demonstrated abilities during the relevant period. (Tr. 23.) "This court defers to the ALJ's determinations 'as long as good reasons and substantial evidence support the ALJ's evaluation.'" *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)). This Court concludes substantial evidence supports the decision to discount plaintiff's claims, and the ALJ gave good reasons for doing so. Accordingly, this Court finds no error.

The ALJ lawfully found that plaintiff's medical records and treatment failed to support her statements about her symptoms and limitations. (Tr. 25-27.) 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (agency considers "objective medical evidence" when evaluating symptoms). He acknowledged plaintiff's testimony that her lumbar pain was 10/10 on most days and that it prevented her from lifting anything, squatting, sitting for longer than 20 minutes, standing for 15 minutes, and walking more than 2-3 aisles in a store. (Tr. 25, 52.) However, the ALJ also noted that plaintiff's treatment records showed that in February 2016 she had normal gait, sensation, reflexes, and muscle strength and tone. (Tr. 25-26, 829-30.) Plaintiff continued to demonstrate normal sensation, muscle strength, and reflexes during the next month. (Tr. 26, 371, 838-39, 844, 1548.) By December 2017, plaintiff was walking well with normal range of motion in her hips and legs and no radicular pain. (Tr. 26, 1076-77, 1885-86.) Further, plaintiff's records show that between November 2015 and March 2018, she had a normal gait and was able to tandem walk. (Tr. 26, 293, 306, 313, 324, 333, 380, 416, 591, 823, 830, 838, 865, 883, 903, 932, 953, 963, 983, 1026, 1071, 1109, 1168, 1532, 1538, 1547, 1599, 1619, 1633, 1648, 1668, 1682, 1703, 1713, 1742, 1749, 1774, 1805, 1830, 1873, 1921, 1952, 1995.) Between May and July 2018, plaintiff also had normal deep tendon reflexes, normal sensation, and normal muscle strength throughout. (Tr. 26, 676, 678, 682, 684, 687.) It was reasonable for the ALJ to conclude that plaintiff's examinations would have revealed greater clinical abnormalities if she truly had the debilitating systems she alleged. *See* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) (objective evidence showing reduced joint motion, muscle spasm, sensory deficit, or motor disruption is a useful indicator of the intensity and persistence of a claimant's symptoms).

Plaintiff also testified that she had two to three "absent" seizures per day. (Tr. 25, 53.) However, in early 2016, her neurological examinations were normal, and in July 2016 she reported her seizures were stable. (Tr. 27, 317, 820, 831.) In February 2017, plaintiff stated that she had not had a seizure in nine months. (Tr. 27, 844, 931, 962, 974.) One

month later, she reported doing well on her seizure medication and denied any side effects. (Tr. 1727.) In July 2017, plaintiff reported she had one seizure the month before, and in June 2018, she again reported only one seizure the month before. (Tr. 27, 1020, 1983.) In January 2018, plaintiff told her doctor that she thought she had had 5 or 6 seizures since October 2017. (Tr. 1898.) And although she stated that she had experienced two seizures per week in March 2018, the ALJ noted that these seizures were not witnessed by a third party or medical professional, and plaintiff herself was uncertain whether she had in fact experienced a seizure. (Tr. 27, 303, 397, 865, 947, 1020, 1115, 1898, 1928, 1994, 2009.)

Plaintiff also claims she was unable to work due to fibromyalgia, which she reported caused numbness in her arms and legs. (Tr. 25, 52, 220.) However, in January 2018, plaintiff had no numbness, tingling, or weakness upon examination. (Tr. 26, 1092.). One month later, she had normal reflexes, sensation, and fine finger movements. (Tr. 26-27, 1109.) The ALJ also noted that plaintiff's reported increase in pain in March 2018 coincided with her stopping fibromyalgia medication. (Tr. 27, 1118.) Plaintiff also alleged disabling migraines, even though the record evidence demonstrated that Imitrex was effective in controlling them. (Tr. 27, 303, 947, 1020, 1915.) *See Cypress v. Colvin*, 807 F.3d 948, 951 (8th Cir. 2015) (if claimant's pain is controlled by treatment or medication, it is not considered disabling). Finally, plaintiff complained of memory and concentration problems, although her treatment notes consistently described her memory, attention, and concentration as "preserved" or "intact." (Tr. 23, 293, 306-07, 313, 324, 333, 359, 371, 380, 591, 829, 838, 883, 902, 921, 952, 983, 1026, 1070, 1109, 1538, 1547, 1571, 1599, 1618, 1633, 1648, 1668, 1682, 1702, 1742, 1748, 1774, 1805, 1830, 1872, 1881, 1921, 1952.)

This record evidence raises questions concerning the consistency of plaintiff's claim, because even when a claimant's testimony is fully accepted, subjective claims alone are insufficient to prove disability:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and

> laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. §§ 404.1529(a), 416.929(a). Given the lack of record evidence, the absence of "medical signs and laboratory findings" in support of plaintiff's allegations is inconsistent with a finding of disability. Despite this, the ALJ gave plaintiff the benefit of the doubt and limited her to light work with additional limitations. (Tr. 24.)

The ALJ also discussed plaintiff's daily activities and demonstrated abilities during the relevant period. The ALJ noted that plaintiff stated she could prepare simple meals, manage her finances, attend medical appointments, shop in stores, read, play games, watch television, needlepoint, and use the internet. Plaintiff also got along with others, socialized with friends and family, attended church, and interacted appropriately with authority. (Tr. 23, 231-34.)

Plaintiff argues these activities do not support the conclusion that she can work. However, the ALJ considered not only her activities, but her treatment notes, and the medical opinion evidence in reaching his RFC determination. (Tr. 24-28.) Therefore, while plaintiff's activities alone do not prove she was not disabled, they do provide substantial evidence that her condition during the relevant period was not as limiting as she claimed. 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (ALJ must consider claimant's "daily activities" when evaluating symptoms).

Plaintiff also contends the ALJ erred in failing to discuss the so-called *Polaski* factors. However, the *Polaski* factors largely parallel the regulations found at 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), which state that the ALJ will consider daily activities, pain, precipitating and aggravating factors, medication, treatment, measures to relieve pain, and other factors concerning her functional limitations and restrictions. *See*

*Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir. 1984). Here, the ALJ stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529(c)(3) and § 416.929(c)(3)" (Tr. 24.) The ALJ is not required to discuss every factor in his documentary opinion, as long as he has considered them in his analysis. *See Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013).

The ALJ also considered medical opinion evidence in his RFC finding, giving significant weight to the opinion of state agency physician Joann Mace, M.D., and little weight to the opinions of state agency psychologist Elissa Lewis, Ph.D., and treating psychiatrist Arturo Taca, M.D. (Tr. 28, 98-99, 110-11, 112-15, 1391-94.) As plaintiff does not question the ALJ's consideration of opinion evidence, this Court will not address the issue further.

As to plaintiff's argument that the ALJ failed to account for her daily seizures in her RFC, as previously discussed, the record evidence did not support the alleged frequency of plaintiff's seizures. (Tr. 27, 303, 317, 820, 831, 844, 865, 931, 947, 962, 974, 1020, 1727, 1898, 1928, 1983, 1994, 2009.) The ALJ's RFC limitations comport with the opinion of Dr. Mace, as well as the objective record evidence, in accounting for plaintiff's alleged seizures. (Tr. 24, 28, 112-14.) Accordingly, this Court concludes the ALJ lawfully accounted for all of plaintiff's supported limitations in determining her RFC.

In summary, the court concludes that the ALJ properly included all limitations supported by the record into plaintiff's RFC. The vocational expert indicated that an individual with plaintiff's limitations could perform work existing in significant numbers in the national economy. As such, the ALJ properly concluded that plaintiff was capable of other work, and thus was not disabled.

## VI. CONCLUSION

For the reasons set forth above, the decision of the Commissioner of Social Security is affirmed. An appropriate Judgment Order is issued herewith.

**/s/ David D. Noce**
**UNITED STATES MAGISTRATE JUDGE**

Signed on February 10, 2021.